JEWELL v. DAVIES, U. S. District Judge.

No. 11395.

United States Court of Appeals
Sixth Circuit.

Nov. 28, 1951.

Wallace J. Baker, Cleveland, Ohio, Wallace J. Baker, Cleveland, Ohio, and Val Sanford, Nashville, Tenn., on the brief, Clement & Clement, Nashville, Tenn., of counsel, for petitioner.

Hugh C. Howser, Nashville, Tenn., Hugh C. Howser, James C. Summers, Nashville, Tenn., on the brief, for respondent.

M. F. L. Keith, amicus curiae.

Before HICKS, Chief Judge, and ALLEN and McALLISTER, Circuit Judges.

HICKS, Chief Judge.

This is a petition by Bishop M. L. Jewell, as Chief Overseer and Supreme Head of the Church of the Living God, the Pillar and Ground of the Truth, for a writ of mandamus to compel the Judge of the District Court for the Middle District of Tennessee to dissolve a stay order entered on April 5, 1951, in the case of M. L. Jewell, Plaintiff, v. M. F. L. Keith et al., Defendants, Civil Action No. 1196.

This court entered an order directing the Judge to show cause why he should not dissolve the stay order. The Judge did not make answer or return directly but permitted defendant M. F. L. Keith, through her counsel, to respond in his behalf. We heard oral argument on the petition and briefs have been filed and considered. We think the petition should be denied.

Petitioner as Chief Overseer and Supreme Head of the Church of the Living God, the Pillar and Ground of the Truth, avers that she is the plaintiff in Civil Action 1196 filed in the District Court; that certain of the defendants therein, to wit, W. O. Girtman, N. W. Mayes, A. W. Taylor, W. L. Taylor, and Frank McLeod were the Trustees of the church and as such held legal title to certain real property located in Nashville at No. 1915 Heiman Street, in trust, for the benefit of the entire church and its membership; that this property is the spiritual seat and "General Headquarters of the entire Church" and is generally regarded by the membership of the church as the "Holy Ground of the Church and the Sacred Meeting Place and Assembly."

The petition continues: "Petitioner therefore prayed in the original suit in the United States District Court for the Middle District of Tennessee that title in the real estate located at 1915 Heiman Street, Nashville, Tennessee, be declared to be in the defendant Trustees as General Trustees of the Church of the Living God, the Pillar and Ground of the Truth, appointed in the 1948 General Assembly and being W. O. Girtman, N. W. Mayes, A. W. Taylor, W. L. Taylor and Frank McLeod, for the use and benefit only of this Petitioner as the Supreme Head and Chief Overseer of the Church of the Living God, the Pillar and Ground of the Truth, and that the Defendant Trustees be declared to be the properly

elected Trustees holding legal title to said property for the benefit only of the Petitioner, Bishop M. L. Jewell, and the lay members of her Church; and that Bishop M. F. L. Keith, Felix B. Lewis and A. H. White, together with their Trustees, corporations and Churches and the members thereof, be declared to have no right, title or interest in or to the said property, or the use thereof; and that Bishop M. L. Jewell be declared to be the Supreme Head and the Sole Chief Overseer of the Church of the Living God, the Pillar and Ground of the Truth, and that her Church be declared to be the sole descendant of and is the Mother Church as founded by Mother Tate and known as the Church of the Living God, the Pillar and Ground of the Truth."

The District Court on April 5, 1951, made the following order:

"IN THE

District Court of the United States

FOR THE MIDDLE DISTRICT OF TENNESSEE

NASHVILLE DIVISION

M. L. JEWELL
Plaintiff
v.
M. F. L. KEITH, et al
Defendants

Civil Action
No 1196

D   Received for Entry
1:45 P. M.
APR 5 1951
L. B. ORMES, Clerk
By J. McCRARY, D. C.

"In the above styled cause, the motion of plaintiff M. L. Jewell to strike the answer of the defendant A. H. White, individually and as Bishop, etc., is denied.

The motion of the defendant M. F. L. Keith, individually and as Bishop, etc., to stay proceedings in the above styled cause for the reason that there is a former suit pending in Part I of the Chancery Court for Davidson County, Tennessee, is granted.

This 5th day of April, 1951.

/s/ ELMER D. DAVIES
United States District Judge."

This is the order which petitioner asks us to command the District Judge to dissolve.

In petitioner's action in the District Court jurisdiction is invoked by reason of the diversity of citizenship of the parties and by the fact that the value of the property involved exceeds the sum of $3,000.00, exclusive of interest and costs.

With reference to the suit pending in the State court, the petition states: "Your Petitioner respectfully states that the proceedings in the State court were merely for the determination of the rights of certain of the parties as affecting the title to the property located in Nashville, Tennessee."

It is apparent from the above excerpt as well as from the briefs and arguments of counsel that while other issues are involved in the District Court case, there is one important and probably the most important issue, the crux of which is common to both courts, and that is, who has the legal title to the church property.

■ It is an elementary proposition that federal courts adopt and apply the decisions of State courts affecting questions of title to real estate. See Black's Law of Judicial Precedents, p. 504, Sec. 152 and the large number of cases there cited, and especially the case of Beauregard, etc. v. City of New Orleans et al., 18 How. 497, 59 U.S. 497, 498, 15 L.Ed. 469, wherein it is said: "The constitution of this court requires it to follow the laws of the several States as rules of decision wherever they properly apply. And the habit of the court has been to defer to the decisions of their judicial tribunals upon questions arising out of the common law of the State, especially when applied to the title of lands."

See also League v. Egery, et al., 24 How. 264, 65 U.S. 264, 16 L.Ed. 655; Edwards, Tr. v. Davenport, C.C., 20 F. 756; Lauriat v. Stratton, C.C., 11 F. 107. This rule has its foundation in comity between the courts and is "sanctioned no less by the universal habit of the federal courts than by considerations of common sense and judicial propriety." Black's Law of Judicial Precedents, p. 455, Sec. 133.

■ The district court of course had jurisdiction over petitioner's case and it

therefore had the power to make the stay order. This is true because the power to make the order is incidental to the power of the court to control the disposition of the case on its docket. This power is not affected by the fact that the parties in the two causes are not exactly the same or that the issues in each were not identical. Landis v. North Amer. Co., 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153; North American Co. v. Landis, 66 App.D.C. 141, 85 F.2d 398, 402. Mandamus does not lie to control the discretion of the court in making the order unless it appears that its discretion has been abused, and we find no such abuse of it here. State of Virginia v. Rives, 100 U.S. 313, 314, 25 L.Ed. 667. Moreover, we are not authorized to grant mandamus here because we are specifically requested to command the District Judge to dissolve the stay order granted by him. This we cannot do. The extraordinary writ of mandamus will not issue to require a court to make a particular decision. Ex parte Park & Tilford, 245 U.S. 82, 83, 85, 38 S.Ct. 15, 62 L.Ed. 164. It will not lie to compel a court to reverse or retract a decision such as is sought here. I. C. C. v. U. S. ex rel. Members of Waste Merch. Ass'n, 260 U.S. 32, 34, 43 S.Ct. 6, 67 L.Ed. 112; Ex parte Slater, 246 U.S. 128, 134, 38 S.Ct. 265, 62 L.Ed. 621; Ex parte Roe, 234 U.S. 70, 73, 34 S.Ct. 722, 58 L.Ed. 1217; Ex parte Wagner, 249 U.S. 465, 471, 39 S.Ct. 317, 63 L.Ed. 709; In re Rice, 155 U.S. 396, 403, 15 S.Ct. 149, 39 L.Ed. 198; Wilbur v. United States ex rel. Kadrie, 281 U.S. 206, 218, 50 S.Ct. 320, 74 L.Ed. 809. Furthermore, the general rule is that the writ of mandamus will issue only where the duty to be performed is ministerial and the obligation to act peremptory, and plainly defined. Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 26, 63 S.Ct. 938, 87 L.Ed. 1185; Internat. Contr. Co. U. S. ex rel. v. Lamont, 155 U.S. 303, 15 S.Ct. 97, 39 L.Ed. 160. We have been cited to no statute or decision which makes it the plain duty of the Judge to retract the order herein complained of. Wilbur v. United States, supra, 281 U.S. 218, 50 S.Ct. 320. He might have revoked the order or modified it in his discretion but there is a wide field between such course and compulsion.

■ Again, we find nothing in the petition to indicate that the District Court was ever asked to grant a rehearing upon the order complained of and certainly no appeal was taken from it. We think that it was an appealable order. True enough, it was an interlocutory decision and did not in express words grant an injunction Title 28, Ch. 83, Sec. 1292 Judicial Code, but it stayed proceedings in petitioner's case just as effectively as if petitioner had been specifically enjoined from proceeding further with the case.

In speaking of Sec. 129 of the old Judicial Code (the progenitor of Sec. 1292), the Supreme Court in Ettelson v. Metropolitan Life Ins. Co., 317 U.S. 188, 192, 63 S.Ct. 163, 165, 87 L.Ed. 176, said: "The relief afforded by section 129 is not restricted by the terminology used. The statute looks to the substantial effect of the order made. * * *" See Enelow v. New York Life Ins. Co., 293 U.S. 379, 382, 55 S.Ct. 310, 79 L.Ed. 440; Gen. Elec. Co. v. Marvel Rare Metals Co., 287 U.S. 430, 433, 53 S.Ct. 202, 77 L.Ed. 408; Shanferoke Coal & Supply Co. v. Westchester Service Co., 293 U.S. 449, 452, 55 S.Ct. 313, 79 L.Ed. 583.

In North American Co. v. Landis, supra, 85 F.2d 398, an appeal was allowed from an interlocutory order which stayed further proceedings in plaintiff's suits against the defendants below. The validity of this order was not questioned either in the Court of Appeals or in the Supreme Court.

In the late case of Ex parte Fahey, 332 U.S. 258, 67 S.Ct. 1558, 1559, 91 L.Ed. 2041, the court said: "Mandamus, prohibition and injunction against judges are drastic and extraordinary remedies. We do not doubt power in a proper case to issue such writs. But they have the unfortunate consequence of making the judge a litigant, obliged to obtain personal counsel or to leave his defense to one of the litigants before him. These remedies should be resorted to only where appeal is a clearly inadequate remedy. We are unwilling to utilize them as a substitute for appeal. As

extraordinary remedies, they are reserved for really extraordinary causes." I. C. C. v. United States ex rel. Campbell, 289 U.S. 385, 394, 53 S.Ct. 607; Ex parte Riddle, 255 U.S. 450, 41 S.Ct. 370, 65 L.Ed. 725; Ex parte Schwab, 98 U.S. 240, 25 L.Ed. 105; United States v. Thompson, 251 U.S. 407, 417, 40 S.Ct. 289, 64 L.Ed. 333; Ex parte Nat'l Park Bank of New York, 256 U.S. 131, 41 S.Ct. 403, 65 L.Ed. 863; Ex parte Tiffany, 252 U.S. 32, 37, 40 S.Ct. 239, 64 L.Ed. 443.

Petition denied.